Filed 2/25/15 Unmodified version attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM J. BLUMBERG,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>        v.<br><br>GLORIA M. MINTHORNE, as Trustee, etc.,<br><br>    Defendant, Cross-Complainant and Appellant. | G050428<br><br>(Super. Ct. No. PRODS1000744)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed herein on January 27, 2015, be modified as follows:

On page 4, in the second full paragraph, the penultimate sentence is stricken and replaced by the following sentence:  "Gloria later filed a declaration stating the Pleasant Avenue property was an asset of the trust, and she had sold it and used the proceeds to purchase the second Hesperia property."

On page 6, in the third full paragraph, the first sentence is stricken and replaced by the following sentence: "On January 28, 2013, Gloria quitclaimed the second Hesperia property to her daughter, Debra."

The petition for rehearing is DENIED. This modification does not effect a change in the judgment.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

Filed 1/27/15  Unmodified version Certified for publication 2/4/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM J. BLUMBERG,<br><br>    Plaintiff , Cross-Defendant and Respondent,<br><br>        v.<br><br>GLORIA M. MINTHORNE, as Trustee, etc.,<br><br>    Defendant, Cross-Complainant and Appellant. | G050428<br><br>(Super. Ct. No. PRODS1000744)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Cynthia Ann Ludvigsen, Judge.  Appeal dismissed.

Law Office of Robert E. Dougherty and Robert E. Dougherty for Defendant, Cross-Complainant and Appellant.

Blumberg Law Corporation and Ave Buchwald for Plaintiff, Cross-Defendant and Respondent.

This case is a dispute about the administration of a family trust and the interpretation of trust documents. At the conclusion of a bench trial, the court decided in favor of plaintiff Adam J. Blumberg, the step-grandson of defendant Gloria Minthorne.[1] Gloria was ordered by the court to file an accounting and quitclaim certain property to Adam. Gloria appealed. She quitclaimed that property to her daughter and failed to file the accounting.

Adam moved to dismiss the appeal, citing the disentitlement doctrine. We agree with Adam that this is one of the rare cases where applying this doctrine is appropriate due to Gloria's flagrant violation of the court's orders. The appeal is therefore dismissed.

I

FACTS

The Minthorne Family Living Trust (the trust) was signed by spouses Gloria and Ralph Minthorne on February 19, 2008, soon after Ralph suffered a stroke. Both had previous estate plans, written in 2007. They had been married since 2006, when Ralph was 75 and Gloria was 61.

With respect to the trust, Gloria and Ralph were both settlors; Gloria alone was named as trustee. The parties both had assets and adult children from prior marriages. Adam was one of Ralph's grandchildren. The property in the trust included an apartment building, originally owned by Ralph, and two single-family homes (the Starshine property and the Pleasant Avenue property, respectively), previously owned by Gloria. All of these properties went into the trust.

The trust included two clauses regarding the division and distribution of the trust property after Gloria or Ralph's death. The first clause, section 4, stated, among

---

[1] Because of the possibility of confusion arising from common surnames, we use first names where appropriate. No disrespect is intended.

2

other provisions, that after the death of the deceased settlor, the trustee was to allocate the entire trust estate to a survivor's trust, and then distribute the net income for the benefit of the surviving settlor in installments. The surviving settlor also had a general power of appointment.

The second clause, section 5, reads more like the provisions one expects to see in a will. It stated, for example, that if Ralph died first, Gloria, "if she survives him," was to receive all personal effects, the contents of their home, and all bank accounts. Certain personal property was devised to specific children of Ralph and Gloria, and one-half of the interest in the apartment building was left to Gloria. "All the rest, residue, and remainder of the trust estate, including the remaining one-half interest in" the apartment building or its proceeds, if the building had been sold, was left to designated children and grandchildren, including Adam and his sister Heather Blumberg. The Pleasant Avenue property, not elsewhere mentioned, would also have been included in this remainder estate. Essentially, Adam and Heather were each entitled to 12.5 percent of the total proceeds.

If Gloria was the first to die, her son Thomas George Brannan, Jr., was to receive the Starshine property, her daughter Debra Michelle Brannan and her children were to receive the Pleasant Avenue property, and "[a]ll of the balance of the trust estate shall be distributed to Ralph E. Minthorne . . . ."

Ralph died in November 2008. In January 2009, Gloria's attorney, Samuel P. Crowe, the same attorney who had drafted the trust, informed counsel for Ralph's children, Victor P. Skvarna, that the estate would be distributed in a manner consistent with section 5 of the trust. Indeed, this letter quoted significant sections of section 5 without change. Gloria had already taken steps toward effecting the transfer of the designated personal property and the Starshine property. Crowe stated the apartment building was in escrow for a purchase price of $925,000, and the net proceeds would be distributed pursuant to section 5.

3

Between March and August 2010, Skvarna, on Adam's behalf, made numerous requests for an accounting of the trust. The final request, in August, stated that legal action would follow.

In May 2009, Crowe advised Skvarna the sales price on the apartment building had dropped to $800,000. The net proceeds Gloria received, as trustee, after the mortgage was paid off, were approximately $313,000. Gloria deposited this check into her personal bank account, and then wrote a check from that account to Crowe's trust account. Crowe distributed $157,000 to Gloria in two checks. All of this is essentially consistent with section 5's provision leaving Gloria 50 percent of the proceeds from the apartment building. Gloria then used these funds to buy a home in Hesperia in September 2009 (the first Hesperia property), taking title in her personal capacity.

In April 2010, Gloria entered into a contract to sell the Pleasant Avenue property, executing the deed as trustee. Gloria received approximately $108,000 which was wired to her personal account. She also received a second payment of $1,800 also deposited to the same account. Shortly thereafter, in April, she entered into a contract for $87,500 to buy a property adjacent to the Hesperia property she had previously purchased (the second Hesperia property). She took title to this property in her personal capacity, not as trustee. Gloria later filed a declaration stating the Pleasant Avenue property was an asset of the trust, and she had sold it and used the proceeds to purchase the first Hesperia property. She acknowledged that property was an asset of the trust.

In July 2010, Crowe advised Adam the total amount of trust funds to be distributed to those other than Gloria was approximately $115,000, and accordingly his share was approximately $14,000. A check in that amount was enclosed.

On October 5, 2010, Adam filed a petition to remove Gloria as trustee, recover trust property, compel an accounting, appoint a successor trustee, and for damages. In sum, Adam alleged Gloria never provided a proper accounting, took the position the Pleasant Avenue property was not a trust asset and wrongfully sold it,

4

mishandled the apartment building administration and sale, and generally acted in bad faith.

The matter proceeded to trial. In its statement of decision, filed November 27, 2012, the court rejected Gloria's argument that sections 4 and 5 were not inconsistent and that she was entitled to everything under section 4. "Sections 4 and 5 cannot both be applicable. The distribution sections of 5 make no sense if 4 applies." The court rejected Gloria's claim that a construction of section 4 leaving her free to do as she wished with all trust assets was consistent with Ralph's intent "to make sure Gloria was taken care of and then leave his property to his children and grandchildren. Neither [Gloria nor Crowe] testified that he intended Gloria to have control over all the property if he died first nor did they testify that he intended any scenario in which Gloria could control the assets so as to leave his children and grandchildren with nothing. Section 4 permits such a scenario, while Section 5 accomplishes the intent they both testified to — assuring that Gloria was taken care of while leaving assets for his children and grandchildren. Gloria was taken care of because she retained real property, all cash and bank accounts, all personal property, and one-half interest in the apartment building and its income . . . ."

The court also pointed to Gloria's behavior after Ralph died as evidence of Ralph's intent. "All of her actions and communications with the children, grandchildren and their representatives indicated that she understood Section 5 to be the operative distribution provisions of the trust. [¶] . . . Only when the family insisted upon an accounting . . . did Gloria begin to balk. When Ralph's family members filed their petition in this case, she then began to assert a position that she was entitled to everything under Section 4 of the trust." The court found the statements of Gloria's attorney, her agent, contradicted this assertion. In addition, the court found Gloria's credibility lacking "in key areas."

In conclusion, the court found Gloria liable to Ralph's children and grandchildren. Gloria was removed as trustee and replaced by Adam. As relevant here, Gloria was ordered to reconvey the first Hesperia property to Adam as trustee and prepare and file an accounting, with a hearing on the accounting set for December 18, 2012.

Gloria filed a notice of appeal on December 17, 2012. No accounting had been filed and no quitclaim deed had been recorded. At the hearing on December 18, the court set an order to show cause (OSC) hearing on the accounting and the status of the deed for January 29, 2013.

On January 28, 2013, Gloria quitclaimed the first Hesperia property to her daughter, Debra. On the same day, she also filed a response to the OSC, arguing the court's orders were stayed pending appeal. Nonetheless, she offered to "voluntarily file an accounting" within 60 days. She also suggested that as an alternative to conveying the first Hesperia property, the court could either stay transfer without bond, appoint a neutral temporary trustee to hold title, or stay transfer upon reasonable bond. Nowhere in this filing does she mention that she either had already quitclaimed the property to Debra or planned to do so on that same day.

At the hearing on January 29, the court continued the hearing to permit Adam to respond to Gloria's filing. At the continued hearing on February 13, the trial court ordered that by March 6, Gloria either quitclaim the property to Adam as trustee or file a $90,000 undertaking. She was ordered to file and serve her accounting by March 27. Apparently neither the court nor Adam, at that point, were aware of Gloria's quitclaim to Debra.

On March 6, Adam's attorney appeared in court. According to the transcript, Gloria's attorney had phoned the court and stated he was sick, asking for a continuance. The court denied the request. The court lifted the stay imposed by the Probate Code, and stated it would order the clerk of the court to execute the quitclaim

6

deed. Gloria and her counsel also failed to appear at the March 27 hearing on the accounting. An OSC re sanctions was set. The record does not disclose that Gloria ever filed an accounting, despite her statement that she would do so.

According to Adam's counsel, he learned for the first time of the quitclaim to Debra on April 26, 2013. On April 30, Adam filed the instant motion to dismiss the appeal. Gloria opposed, and requested sanctions of $4500 against Adam and his counsel for filing the motion.

## II

## DISCUSSION

*Statutory Background*

Generally, an appeal stays the operation of the judgment. But an "appeal shall not stay the operation and effect of the judgment or order if the court requires an undertaking, as provided in Section 917.9 of the Code of Civil Procedure, and the undertaking is not given." (Prob. Code, § 1310, subd. (d).) Code of Civil Procedure section 917.9 states "(a) The perfecting of an appeal shall not stay enforcement of the judgment or order . . . if the trial court, in its discretion, requires an undertaking and the undertaking is not given, in any of the following cases: [¶] (1) Appellant was found to possess money or other property belonging to respondent. [¶] (2) Appellant is required to perform an act for respondent's benefit pursuant to judgment or order under appeal."

"'A trial court's judgment and orders, all of them, are presumptively valid and must be obeyed and enforced. [Citation.]'" (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1231 (*Stoltenberg.*)

*Disentitlement Doctrine*

"An appellate court has the inherent power, under the 'disentitlement doctrine,' to dismiss an appeal by a party that refuses to comply with a lower court order. [Citations.] As the Supreme Court observed in *MacPherson v. MacPherson* [(1939)] 13

Cal.2d [271,] 277, 'A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]' [¶] . . . [An] equitable rationale underl[ies] the doctrine. '"Dismissal is not '"a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance"' with a presumptively valid order. [Citation.]" [Citation.]"''" (*Stoltenberg*, *supra*, 215 Cal.App.4th at pp. 1229-1230.) "No formal judgment of contempt is required; an appellate court 'may dismiss an appeal where there has been *willful disobedience or obstructive tactics.* [Citations.] The doctrine 'is based upon fundamental equity and is not to be frustrated by technicalities.' [Citation.]" (*Id.* at p. 1230.)

"The disentitlement doctrine has been applied to a wide range of cases, including cases in which an appellant is a judgment debtor who has frustrated or obstructed legitimate efforts to enforce a judgment. (E.g., *Stoltenberg*, *supra*, 215 Cal.App.4th 1225 [defendants repeatedly, and in contempt of sister-state orders, frustrated the enforcement of the Cal. judgment that was the subject of their appeal]; *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377 [appeal dismissed where, despite trial court's order, defendants willfully refused to respond to postjudgment interrogatories]; *Stone v. Bach* (1978) 80 Cal.App.3d 442 [appellant disobeyed a prejudgment order directing the deposit of partnership funds collected by him into a trustee account and, after the judgment, was found in contempt for failing to appear at a judgment debtor examination].)" (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 758.)

*Gloria's Conduct and the Doctrine's Application*

Gloria disobeyed two court orders. The first order relates to the accounting, which she claims she has now filed, but was not attached to her opposition to the motion to dismiss. Any argument that she was not required to comply with the court's order to

8

file an accounting by March 27 is waived due to her agreement that she would file an accounting within 60 days of January 29, 2013. She cannot now argue that she was not truly required to follow an order she voluntarily agreed to comply with, therefore relieving Adam of any necessity to file an argument that she was indeed required to complete the accounting. She has, simply put, waived this issue by her agreement.

The second issue is the conveyance of the property. Gloria's conduct with respect to this issue is, to put it bluntly, despicable. She was ordered to quitclaim the property to Adam. She failed to do so. The court set an OSC. On the same day she filed an opposition to the OSC, she recorded a quitclaim to her daughter at 4:10 in the afternoon. The opposition does not mention this, instead suggesting a number of options in lieu of quitclaiming the property to Adam, including staying the transfer, appointing a neutral trustee, or staying transfer upon a reasonable bond. She was utterly dishonest with the court.

Gloria throws various varieties of pasta at the proverbial wall in her opposition to Adam's motion to dismiss, in an apparently desperate hope that something will stick, all the while failing to distinguish her behavior from any case where the court held the disentitlement doctrine applied. First, she argues the court's order was "not lawful" because of the stay, ignoring the court's decision to lift the stay with respect to the transfer of the property. She focuses on whether the appeal stayed Adam's status as the trustee, but that does not vitiate the court's order. Her option was either to post the bond or seek writ relief from the Court of Appeal. Similarly, she argues the amount of the bond the court set was too high, exceeding the limit for damages under the relevant statute. Again, her remedy was writ review, not ignoring the order. It was not up to her to decide to ignore the court's order under her privately held belief it was invalid. "'A trial court's judgment and orders, all of them, are presumptively valid and must be obeyed and enforced. [Citation.]'" (*Stoltenberg*, *supra*, 215 Cal.App.4th at p. 1231.)

9

Finally, she argues the "order to convey in this case is the equivalent of a mandatory injunction." Ordinarily, mandatory injunctions are stayed pending an appeal, but she offers no authority for the proposition that rule should apply here. This case falls under the Probate Code, and under general rules of statutory construction, more specific statutes prevail over more general ones. (See *Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 119.) Thus, Probate Code section 1310 applies, not the more general rules relating to mandatory injunctions.

Gloria's conduct since the judgment has frustrated the attempts of the court to legitimately effect its own orders. She has missed court dates, failed to keep her own promises, lacked candor in her communications with the court, and ignored the court's orders. She cannot therefore now seek relief from the appellate court. The disentitlement doctrine applies.

## III

## DISPOSITION

The appeal is dismissed. Needless to say, Gloria's request for sanctions is denied. Adam is entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

10

Filed 2/4/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM J. BLUMBERG,<br><br>   Plaintiff, Cross-defendant and Respondent,<br><br>       v.<br><br>GLORIA M. MINTHORNE, as Trustee, etc.,<br><br>   Defendant, Cross-complainant and Appellant. | G050428<br><br>(Super. Ct. No. PRODS1000744)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

Ironridge Global IV, Ltd has requested that our opinion, filed on January 27, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.