Filed 10/13/22 Nosrati v. Cronen CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| M. SAEID NOSRATI et al., | B315738 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. LC102860) |
| v. | |
| SHEILA CRONEN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge. Reversed with directions.

J. Hartley Law and Jura Andrew Hartley for Plaintiffs and Appellants.

Practus and Steven E. Young; Alon, Edward E. Alon and Jonathan A. Alon for Defendant and Respondent Manuel Gonzalez.

Lipeles Law Group, Kevin A. Lipeles and Thomas H. Schelly for Defendant and Respondent Sheila Cronen.

# INTRODUCTION

M. Saeid Nosrati and Nooshin Haroonian sued Manuel Gonzalez and Sheila Cronen (also known as Sheila Gonzalez; for simplicity, we refer to Gonzalez and Cronen as the Gonzalezes) alleging the Gonzalezes failed to disclose defects in a home they sold to Nosrati and Haroonian. Shortly before trial the Gonzalezes accepted Nosrati's demand for rescission of the purchase agreement, and the trial court granted the Gonzalezes' motion to rescind the agreement. Following the trial, the court awarded Nosrati and Haroonian consequential damages and, under Civil Code section 3287, subdivision (a), prejudgment interest on the purchase price from the date the court ordered rescission.[1]

Nosrati and Haroonian contend the trial court should have awarded prejudgment interest from the date Nosrati served the original complaint, which gave the Gonzalezes notice of rescission. The Gonzalezes argue that an exception in section 3287, subdivision (a), precluded Nosrati and Haroonian from recovering prejudgment interest prior to the date the court ordered rescission. The Gonzalezes also ask us to dismiss Nosrati and Haroonian's appeal under the disentitlement doctrine. We conclude that the trial court should have awarded prejudgment interest from the date Nosrati served the original complaint, that the statutory exception does not apply, and that the Gonzalezes are not entitled to a dismissal of Nosrati and Haroonian's appeal under the disentitlement doctrine. Therefore, we reverse and

---

[1]     Statutory references are to the Civil Code.

direct the trial court to recalculate the amount of prejudgment interest.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Nosrati and Haroonian File This Action Against the Gonzalezes*

In 2013 Nosrati and Haroonian purchased a residential property in Tarzana from the Gonzalezes for approximately $1 million.  After purchasing the home, Nosrati and Haroonian discovered defects in the property that the Gonzalezes had not disclosed, including broken irrigation pipes and a leaking pool. Nosrati and Haroonian claimed they spent more than $400,000 repairing and remodeling the property.

Nosrati filed this action in April 2015 against the Gonzalezes, alleging causes of action for fraud, intentional misrepresentation, negligent misrepresentation, breach of contract, failure to disclose information on the real estate disclosure statement as required by section 1102.6, and negligence.[2]  Nosrati sought damages and rescission of the purchase agreement.  In September 2018 Nosrati filed the operative, third amended complaint, adding his wife, Haroonian, as a plaintiff.

---

[2]     Nosrati also alleged causes of action against the Gonzalezes' son and the real estate agents involved in the transaction, which were later dismissed.

3

### B. *The Gonzalezes Agree To Rescind the Purchase Agreement, and the Court Orders Rescission*

In April 2019 Gonzalez filed a document titled "Verified Notice of Acceptance of Plaintiffs' Rescission of Contract," which stated he was "ready willing and able to restore everything of value received under the contract (to wit: the closing consideration of $1,005,526); subject to restoration of everything of value Plaintiffs received under the contract (to wit: an executed deed conveying the single family residence)." When Nosrati and Haroonian did not respond, the Gonzalezes filed a "motion to enforce plaintiffs' rescission and to dismiss all other claims as moot." In their opposition to the motion, Nosrati and Haroonian stated that they had demanded rescission four years earlier, that the Gonzalezes' delay until the "eve of trial" to agree to rescission prejudiced Nosrati and Haroonian by forcing them to pursue litigation for four years, and that the Gonzalezes had not offered to reimburse Nosrati and Haroonian for the cost of repairs or for their attorneys' fees.

In its tentative ruling, the court stated it had "no framework to evaluate the motion" because the Gonzalezes provided "no procedural authority for the motion." But after hearing oral argument, the court granted the motion, ordered the contract rescinded, and scheduled a court trial to determine how to "adjust the equities between the parties" (§ 1692) to return them to the pre-contract status quo. Neither side challenges this ruling.

C. *The Trial Court Awards Nosrati and Haroonian Damages and Prejudgment Interest*

The four-day court trial focused on consequential damages and equitable adjustments due under section 1692. The parties agreed the Gonzalezes would pay Nosrati and Haroonian the $1,022,762 they paid for the property, plus interest on the promissory note they signed to purchase the property, property taxes they paid while they owned the property, homeowners' insurance premiums they paid, and utility payments they made, for a total of $1,355,328,60. The court found Nosrati and Haroonian were entitled to consequential damages in the amount of $216,943 for repairs and remodeling. The parties agreed the Gonzalezes were entitled to an offset of $53,193 for certain escrow and closing costs. The court awarded the Gonzalezes an additional $293,000 in offsets for the reasonable rental value of the property for the time Nosrati and Haroonian occupied it and $19,000 for the amount the real estate agent defendants paid Nosrati and Haroonian in a settlement.

The court concluded Nosrati was entitled to prejudgment interest on the $1,022,762 purchase price. The court stated that, although in an action for rescission interest is recoverable from the date of rescission, an "interesting question is nonetheless presented whether the 'date of rescission' was the date that the complaint was filed seeking rescission, or the date that the court ordered rescission several years later." The court ruled Nosrati and Haroonian were entitled to interest from August 6, 2019, the date the court ordered rescission, in the amount of $170,460. Nosrati and Haroonian timely appealed from the judgment.

## DISCUSSION

### A.    *Applicable Law and Standard of Review*

Section 3287 provides that a party is entitled to recover prejudgment interest on damages that are certain or capable of being made certain by calculation if the right to recover those damages is vested on a particular day, "except when the debtor is prevented by law, or by the act of the creditor from paying the debt." (§ 3287, subd. (a); see *Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, 21.)  Under section 3287 "prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of a contract, or is readily ascertainable by reference to well-established market values." (*Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 375.)  "In an action based upon rescission of a contract, the plaintiff's right to repayment of moneys paid under the contract is fixed by the rescission, and interest on the moneys paid thus is recoverable from the date of rescission." (*Id.* at p. 376; see *Lund v. Cooper* (1958) 159 Cal.App.2d 349, 352.) Service of a complaint seeking relief based on rescission is deemed to be notice of rescission. (§ 1691; see *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 234.)  We review independently the interpretation of section 3287, subdivision (a). (*Flethez v. San Bernardino County Employees Retirement Assn.* (2017) 2 Cal.5th 630, 639; *KGM Harvesting Co. v. Fresh Network* (1995) 36 Cal.App.4th 376, 390-391.)

### B.    *The Date of Rescission Was the Date Nosrati Served the Original Complaint Seeking Rescission*

Nosrati and Haroonian argue the trial court erred in awarding prejudgment interest on the purchase price from August 6, 2019, the date the court ordered rescission, rather than

6

from April 28, 2015, the date Nosrati gave notice of rescission by serving the original complaint.  We agree with their interpretation of the statute.

As the trial court recognized, a party who recovers damages in an action for rescission is entitled to recover prejudgment interest from the date of rescission.  However, "because of facts peculiar to this case," the court questioned whether the date of rescission was the date Nosrati filed the original complaint or the date the court ordered rescission.  The court stated:  "Although [Nosrati] requested rescission in the original complaint, [Nosrati and Haroonian] opposed [the Gonzalezes'] acceptance of rescission.  That rescission would be ordered was not at all certain until August 6, 2019, when this court ordered rescission.  Rescission was not certain nor the right to recover damages 'certain' under Section 3287 until that court order.  Therefore, the court concludes that [Nosrati and Haroonian are] entitled to interest from the date of the rescission order, August 6, 2019."

The trial court confused uncertain liability with uncertain damages.  Under section 3287, subdivision (a), what must be certain (or readily ascertainable) is the amount of damages, not the right to recover them.  (See *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 919 ["A legal dispute concerning the defendant's liability or uncertainty concerning the measure of damages does not render damages unascertainable"]; *Shell Oil Co. v. National Union Fire Ins. Co.* (1996) 44 Cal.App.4th 1633, 1651 ["the certainty required of Civil Code section 3287, subdivision (a), is absent when the amounts due turn on disputed facts, but not when the dispute is confined to the rules governing liability"]; see also *Olson v. Cory* (1983) 35 Cal.3d 390, 402 [uncertainty over "legal issues did not prevent the amounts due

7

from being 'certain or capable of being made certain by calculation'"].)

While it might have been uncertain whether the court would order rescission, the purchase price the Gonzalezes would have to return to Nosrati and Haroonian was never uncertain.[3] "In rescission cases involving a real estate purchase, 'the seller must refund all payments received in connection with the sale. [Citation.] If the buyer has taken possession of the property, the buyer must restore possession to the seller. [Citation.] Such recovery of the consideration exchanged is part of restitution.'" (*Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1386.) The purchase price—the only amount on which the court awarded prejudgment interest—was certain, fixed by the purchase contract, and undisputed. As the court stated in its statement of decision, "The parties have agreed that [Nosrati and Haroonian] paid $1,022,761.60 for the subject property, which must be reimbursed if [the Gonzalezes] are to obtain possession of the property." Nosrati and Haroonian were entitled to prejudgment interest on the $1,022,762 purchase price from April 28, 2015, the

_____

[3] The amount of other damages, such as the cost of repairs, was not certain, but the court did not award prejudgment interest on those items. Under section 3287, subdivision (a), the court had to award prejudgment interest on the $1,022,762 purchase price because that amount of damages was certain (liquidated). The court had discretion under section 3287, subdivision (b), to award prejudgment interest on unliquidated amounts of consequential damages, but the court did not. (See *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 496 ["in contrast to the mandatory nature of subdivision (a)," subdivision (b) grants "*discretion* to the trial court to allow prejudgment interest . . . where the exact amount of damages is in dispute"].)

date Nosrati gave notice of rescission by serving the original complaint.

> ### C. *The Gonzalezes Were Not Prevented by Law or by an Act of Nosrati and Haroonian from Agreeing to Rescission*

The Gonzalezes argue Nosrati and Haroonian "are simply not entitled under the law or equity to any additional interest above that generously awarded by the trial court." They rely on an exception in section 3287, subdivision (a), that applies "when the debtor is prevented by law, or by the act of the creditor from paying the debt." The Gonzalezes argue that they were "prevented by law from accepting any request for rescission" until September 11, 2018, when Nosrati filed the third amended complaint that added Haroonian as a plaintiff, and that, because Haroonian was an indispensable party, the filing of that pleading was when "the first actionable demand for rescission occurred."

The Gonzalezes did not argue in the trial court that Haroonian was an indispensable party or that they were prevented by law from accepting Nosrati's demand for rescission until Nosrati added Haroonian as a party. Therefore, they forfeited these arguments.[4] (See *Johnson v. Greenelsh* (2009)

---

4     Although the Gonzalezes never argued Haroonian was an indispensable party to Nosrati's cause of action for rescission, the real estate agent defendants demurred to Nosrati's causes of action for fraud, intentional misrepresentation, and negligent misrepresentation in the second amended complaint on the ground Haroonian was an indispensable party. The court found "there is a substantial risk of Defendants incurring additional damages should Haroonian subsequently file a separate action. In other words, Haroonian's nonjoinder could potentially preclude

47 Cal.4th 598, 603; *Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 474, fn. 15.) Whether a party is indispensable "is ordinarily treated as a matter where the trial court has a large measure of discretion in weighing factors of practical realities and other considerations." (*Kaczorowski v. Mendocino County Bd. of Supervisors* (2001) 88 Cal.App.4th 564, 568.) We cannot review the trial court's weighing of those factors for abuse of discretion when no one asked the trial court to weigh them or submitted any argument on them or how to weigh them. This is particularly true where, as here, the absent and belatedly claimed indispensable party became a party to the case and participated in a trial on the merits. (See *Martin v. Kehl* (1983) 145 Cal.App.3d 228, 242 [where "'a case has been fully tried without objection to the absence of parties and the claim that the absent parties were indispensable is raised for the first time on appeal, the rule's underlying policy considerations of avoiding piecemeal litigation and multiplicity of suits [citations] are of little consequence inasmuch as the judicial and litigant resources necessary to the litigation have already been expended'"].)

In any event, even if the Gonzalezes had not forfeited the argument, and even assuming Haroonian was an indispensable party, the Gonzalezes are wrong on the law.[5] They cite no

_____

this Court from rendering complete justice amongst the currently named Defendants." The court sustained the demurrer with leave to amend "to allow for the proper joinder of Nooshin Haroonian."

[5] They are also wrong on the math. Under the Gonzalezes' theory, the exception they rely on would eliminate prejudgment interest from April 2015 (when the original complaint was filed) to September 2018 (when Haroonian was added as a plaintiff),

authority for the proposition they were "prevented by law" from accepting Nosrati's demand for rescission because Haroonian was not yet a party to the lawsuit. "The 'prevented by law' exception is rarely invoked." (*Tenzera, Inc. v. Osterman*, *supra*, 205 Cal.App.4th at p. 23.) The exception applies on the rare occasion when a judgment, order, or statute prevents a party from paying a debt, not "merely because there is a dispute as to liability." (*Id.* at p. 24.) No judgment, order, or statute prevented the Gonzalezes from accepting Nosrati's demand for rescission and refunding the purchase price. (See *id.* at p. 25 [defendant was not prevented by law from paying an arbitration award during the pendency of the plaintiff's appeal from an order vacating the award]; *Perkins v. Benguet Consol. Mining. Co.* (1942) 55 Cal.App.2d 720, 769 [corporation was not prevented by law from paying dividends to a shareholder because a decree by a foreign court directing the corporation to transfer the shares to the shareholder's husband was void]; cf. *Bank of China v. Wells Fargo Bank & Union Trust Co.* (9th Cir. 1953) 209 F.2d 467, 476 [bank was "prevented by law and by court order from paying its obligations" because the court had ordered the bank to deposit the disputed funds with the court].)

The Gonzalezes also argue the "act of the creditor" exception applies because Nosrati and Haroonian objected to the Gonzalezes' efforts in 2019 to accept the demand for rescission.[6]

_____

but not from September 2018 to August 2019 (when the court ordered rescission).

[6] The Gonzalezes do not argue Nosrati's failure to add Haroonian as a party in the original complaint was an "act of the creditor" that prevented them from accepting the demand for rescission.

11

As they did with the "prevented by law" exception, the Gonzalezes forfeited this argument by not raising it in the trial court. The Gonzalezes attempt to avoid forfeiture by suggesting the trial court made an "implied finding" Nosrati and Haroonian prevented the Gonzalezes from accepting the demand for rescission, but nothing in the record suggests the court made such a finding. To the contrary, had the court found Nosrati and Haroonian's opposition to the Gonzalezes' attempt to accept the demand for rescission in 2019 was sufficient to invoke the "act of the creditor" exception to section 3287, subdivision (a), the court would have suspended, not begun, the accrual of interest in 2019.[7] (See *Bank of China v. Wells Fargo Bank & Union Trust Co., supra*, 209 F.2d at p. 475 [defendant was entitled to have the court suspend the running of prejudgment interest for the duration of a trial continuance sought by the plaintiff].) Whether Nosrati and Haroonian did anything to prevent the Gonzalezes from accepting the demand for rescission for purposes of section 3287 involves factual issues the trial court was not given the opportunity to resolve.[8]

---

[7] The Gonzalezes' math is wrong again. Under their theory, the exception would eliminate prejudgment interest from April 2019 (when the Gonzalezes accepted rescission) to August 2019 (when the court ordered rescission), but not from April 2015 (when the original complaint was filed) to April 2019.

[8] The Gonzalezes argue that Nosrati and Haroonian did not want to rescind the contract and did not know they were seeking rescission and that Nosrati and Haroonian alleged in a malpractice action that their former attorneys failed to advise them about the consequences of rescission. What Nosrati and Haroonian wanted or knew may explain why they took certain

12

D. *The Disentitlement Doctrine Does Not Justify Dismissing Nosrati and Haroonian's Appeal*

The Gonzalezes ask us to dismiss Nosrati and Haroonian's appeal under the disentitlement doctrine. Under that doctrine, "a reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.) The disentitlement doctrine is "'a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.'" (*Ibid*.) Dismissal under the disentitlement doctrine is not "'"a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance'" with a presumptively valid order." (*Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1391 (*Blumberg*).)

The Gonzalezes argue the doctrine applies here because Nosrati and Haroonian "intentionally violated the trial court's July 27, 2021 judgment" requiring Nosrati and Haroonian to return the property to the Gonzalezes once the Gonzalezes paid Nosrati and Haroonian $1,376,539. The Gonzalezes contend Nosrati and Haroonian violated the judgment by refusing to accept the Gonzalezes' payment in September 2021 and by failing to move out of the property when escrow closed on January 26, 2022. They point to a statement by the trial court at a hearing on an order to show cause regarding contempt that "Mr. Nosrati could be charged with two counts of criminal contempt."

---

actions, but it is irrelevant to whether they did anything to prevent the Gonzalezes from accepting the demand for recission.

13

As an initial matter, there is no need to invoke the disentitlement doctrine to "induce compliance" (*Blumberg, supra,* 233 Cal.App.4th at p. 1391) with the trial court's judgment here because Nosrati and Haroonian complied with it (albeit belatedly). Nosrati and Haroonian accepted the Gonzalezes' payment when escrow closed on January 26, 2022, and they moved out of the property on February 12, 2022.

In any event, the Gonzalezes have not shown Nosrati and Haroonian engaged in the kind of egregious behavior that would justify dismissing their appeal under the disentitlement doctrine. When Nosrati and Haroonian refused to accept the Gonzalezes' payment in September 2021, they told the Gonzalezes they were concerned they would waive their right to appeal if they accepted payment and moved forward with rescission. At a hearing on Nosrati and Haroonian's motion for an order fixing the amount of undertaking, the trial court stated that "the court agrees with plaintiffs that a potential waiver is not out of the question. . . . Plaintiffs' caution in this regard is not unusual." And although Nosrati and Haroonian delayed returning the property to the Gonzalezes after escrow closed, they communicated the reasons for the delay to counsel for the Gonzalezes, attempted to negotiate an extension of their month-to-month lease, and paid rent for the extra time they lived in the property. The parties ultimately agreed to take the request for an order to show cause off calendar, and the court never decided whether Nosrati or Haroonian willfully violated the judgment.

These facts distinguish this case from those where courts have invoked the disentitlement doctrine. For example, in *Blumberg, supra,* 233 Cal.App.4th 1384 the court removed a trustee and ordered her to file an accounting and reconvey

14

property to the new trustee. (*Id*. at p. 1389.) Rather than complying with the court's order, the trustee conveyed the property to her daughter and concealed the conveyance in briefs filed with the court. Observing that the trustee "was utterly dishonest with the court" and calling her conduct "despicable" (*id*. at pp. 1391-1392), the court in *Blumberg* concluded "this is one of the rare cases where applying [the disentitlement] doctrine is appropriate." (*Id*. at p. 1386; see also *Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 764 [dismissing the appeal of a tribe that "failed to pay sanctions and other money judgments," "engaged in a fraudulent transfer of the casino assets that are subject to the judgments, obstructed debtor's exams by proffering witnesses who could not and would not answer questions and refused to comply with an order compelling it to produce documents pertaining to the fraudulently transferred assets"]; *Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.*, *supra*, 238 Cal.App.4th at p. 265 [dismissing the appeal of a defendant who "repeatedly violated the trial court's order restraining it from transferring shares of stock to third parties until it complied with its obligation to issue" shares to plaintiff under a settlement agreement].)

## DISPOSITION

The judgment is reversed.  The trial court is directed to enter a new judgment that awards Nosrati and Haroonian prejudgment interest from the date Nosrati served the original complaint.  Nosrati and Haroonian are to recover their costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

16