Filed 7/11/24  Marriage of Nakajima and Chapman CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of KAORU NAKAJIMA and MICHAEL CHAPMAN. | |
| | D081701 |
| KAORU NAKAJIMA, | |
| Respondent, | (Super. Ct. No. DS29190) |
| v. | |
| MICHAEL CHAPMAN, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Tim Nader, Judge.  Request for judicial notice denied.  Reversed.

Bickford Blado & Botros and Andrew J. Botros for Appellant.

McDougal Boehmer Foley Lyon Mitchell & Erickson and Carrie L. Mitchell for Respondent.

After a ten-year marriage that produced one child, Kauro Nakajima (Wife) and Michael Chapman (Husband) agreed to divorce. To their credit, they negotiated a marital settlement agreement (MSA) that amicably resolved all issues. Husband moved out of the family residence, agreeing that Wife could have exclusive use and possession of the house at least until the couple's child completed elementary school.

In fact, Wife remained in the house for an additional 14 years without any objection from Husband. Finally, Husband asked the family court to order the property be sold and the sales proceeds divided. Wife objected, protesting that she could not afford to purchase another residence in the current market. The court declined to require the sale of the home, although it is unclear whether it believed it had the authority to do so.

Interpreting the MSA, which was incorporated in the judgment of dissolution, we reject Wife's argument that the court was without power to order a sale of the residence over her objection. The parties' agreement expressly reserves court jurisdiction to order sale of the home at the request of either party, which necessarily means that neither party can unilaterally veto the sale. Whether the house *should* be sold at any particular point in time is a decision left to the sound discretion of the family court. We accordingly reverse and remand so that the court can exercise that sound discretion.

### FACTUAL AND PROCEDURAL BACKGROUND

Wife and Husband were married in April 1995. Their only child was born in 1996. In 2001 they purchased a home together.[1] The parties

---

[1] We deny Husband's request for judicial notice of deeds of trust relating to the property, as those documents were not before the trial court.

separated in June 2005, and Wife filed a petition for dissolution of marriage the following month. An MSA, drafted by Wife's attorney, was incorporated into the judgment of dissolution filed later that same year. In it the parties agreed that the family home was community property.

### *The Provisions of the MSA*

The MSA contains several provisions dealing with the family residence. We detail them here because much of this dispute involves the question of whether the MSA either allows for or prohibits the sale of the house.

Paragraph No. 23 is entitled "<u>SALE OF FAMILY RESIDENCE</u>" and provides:

> "B.  The parties shall hold the residence as tenants-in-common, without the right of partition, subject to it being sold and the proceeds distributed as set forth below.  Even if no deed is recorded conveying the property to the parties as tenants-in-common, the parties hereby sever any joint tenancy and they shall own the residence as tenants-in-common, each as to an undivided one-half interest as the sole and separate property of each.  [¶]  C.  The parties shall consider selling the residence upon the child's completion of elementary school until that time [*sic*] the provisions pending the sale of the residence shall be controlling."

Paragraph No. 24 details certain "<u>PROVISIONS PENDING SALE OF RESIDENCE</u>" and indicates:

> "A.  Until the time that the parties decided [*sic*] to sell the residence, Wife shall have exclusive use and occupancy of the residence with the exception that Husband shall be allowed to store any of his possessions at the residence as

---

We generally do not take judicial notice of evidence not presented to the trial court. (*Sweetwater Union High School District v. Julian Union Elementary School District* (2019) 36 Cal.App.5th 970, 986, fn. 6.)  They are also not necessary for our disposition of this appeal.

needed.  [¶]  B. Pending sale, each party shall pay on a current basis, without the right to reimbursement, one half of real property insurance and one half of property taxes. [¶]  C. Pending the sale, it shall be the sole responsibility of the Mother [*sic*] to make the mortgage payments on the residence."

This paragraph also states:

"Both parties are responsible for any maintenance expense or repair necessary or required under the foregoing provisions.  If either party advances the cost of repair to the supplier, escrow shall reimburse that party one half the costs from the other party's share of the net proceeds."

Paragraph No. 25, labeled "DISBURSEMENT OF RESIDENCE SALES PROCEEDS," specifies that the net sale proceeds shall be distributed equally between the parties.

Paragraph No. 26 is entitled "COURT'S JURISDICTION OVER SALE OF RESIDENCE."  It provides:

"The Court . . . shall reserve jurisdiction to enforce the provisions of this section in the event a dispute arises between the parties, or at any time when it is appropriate to do so, and to make further orders as may be required, including but not limited to naming the broker an[d]/or agent, establishing terms of sale and sales price, [and] ordering a sale on terms and conditions which may seem proper to the Court . . . .  Either Husband or Wife may apply to the Court for any of these orders."[2]

---

[2]     Paragraph No. 52 also contains a general reservation of San Diego County Superior Court jurisdiction to supervise (1) payment obligations; (2) division of assets as agreed in the MSA; (3) execution of documents to carry out the terms of the MSA; and (4) overall enforcement of the MSA.

4

Paragraph No. 27 is captioned "<u>OPTION TO PURCHASE RESIDENCE</u>" and states: "Upon jointly making the decision to sell the residence both Husband and Wife shall be given the first opportunity to purchase the residence for fair market value to be determined by and [*sic*] independent appraiser or real estate broker."

***Family Court Proceedings***

In April 2022, Husband filed a request for order (RFO) to sell the marital home as provided in the judgment of dissolution. The parties' child was then twenty-six years old. Husband explained in an accompanying declaration: "The Judgment for dissolution was entered on October 18, 2005. [¶] 2. The judgment states in pertinent part under [P]aragraph 23, subsection C, '*the parties shall consider selling the residence upon the child's completion of elementary school until that time the provisions pending the sale of the residence shall be controlling*'. The relevant sections to the sale of the martial home can be found within [P]aragraph[s] 23 through 27. [¶] 3. Our child is now of majority age, and I am requesting that the marital home be listed and sold per the judgment." (Italics added.)

Wife opposed the motion and filed a declaration, a memorandum of points and authorities, and a notice of lodgment of exhibits. She stated that their child completed elementary school in 2008. According to Wife, she made all payments for the property and, by contrast, Husband did not pay anything for the mortgage, insurance, taxes, maintenance, or repairs for the property since it was purchased.[3] She criticized Husband for waiting to

---

[3]  Wife maintained: "I have made all payments related to the property since I purchased it in 2001." In a reply declaration, Husband disputed some of these factual assertions, claiming that "we purchased the property together, using funds that we earned from the dog grooming business that we started and owned jointly, as well as from other employment that I had at the

request that the home be sold, claiming she would be unfairly prejudiced because rising property values would make it impossible for her to find affordable alternative housing. She argued that Husband's request was barred by the doctrine of laches and by former Family Code section 291, which provided for a ten-year statute of limitations for the sale of property.[4]

In response, Husband maintained that the 2005 judgment of dissolution was "exempt from any requirement that a judgment be renewed" such that the "failure to renew has no effect on enforceability of the judgment." He addressed Wife's claims of unfair delay and prejudice as follows: "[Wife] argues that she would be prejudiced by the sale of the property because she would not be able to afford another home in this area from her half of the proceeds from the sale of the residence. [She] fails to see that she has lived in a home now worth according to her estimate of the appraised value of $530,000 for the last 17 years and has benefitted from [my] delay in requesting the sale. [¶] [She] puts all the onus on [me] for delaying the request to sell the property, when she knew all along that the residence would have to be sold someday pursuant to the judgment. At any time [she] could have made the request to sell the property in order to realize her half the equity of the property and obtain a home of her own at presumably a much lower cost than today."

As significant as the arguments the parties made are the ones they did not. Husband conceded that the MSA's Paragraph No. 23 "was not mandatory," as it only states that the parties would "consider" selling the

_____

time." He also represented that after their child finished sixth grade, and in response to Wife's demand, he "happily took in my daughter, who ended up living with me until she graduated high school and started college . . . with no assistance whatsoever from her mother."

4    Further undesignated section references are to the Family Code.

6

residence when their child finished elementary school. At the same time, Wife never asserted that the MSA prohibited the family court from ordering the sale of the residence. Rather, she relied on various facts and circumstances to argue that it would be "inequitable" for the court to order the sale of the property.

### The Settled Statement

The hearing on this matter was not reported, but Husband's counsel submitted a proposed settled statement, summarizing the proceedings, that was approved by the court. There was no oral testimony at the hearing. The court denied the motion, ruling the MSA did not require it to order the sale as it merely committed the parties to "consider" selling the marital home upon their child's completion of elementary school. The court observed that "[Husband] had admittedly not performed his own obligations under the MSA related to the property, and equity did not require an immediate sale, not called for by the terms of the MSA, to recoup an investment he had not made since signing the MSA." In short, it was the court's view that Husband "was seeking a judicial revision of the MSA over the objection of [Wife], to which he was not entitled." The court made no finding regarding whether under former section 291 Husband was required to renew the judgment of dissolution, or whether the doctrine of laches applied. The findings and order after hearing merely state without elaboration that "there is no requirement to sell the marital home."

7

**DISCUSSION**

Husband's appeal presents three principal issues: (1) Does the parties' MSA prohibit the family court from ordering the sale of the marital residence over Wife's objection? (2) If not, was Husband's RFO barred by his failure to renew the judgment of dissolution? (3) If not, did the court appreciate that its decision on Husband's request required the exercise of its discretion on the particular facts of this case? We address each question in turn after disposing of some preliminary procedural contentions raised by Wife.

**A.      *Wife's Motion to Dismiss the Appeal***

Wife argues we should dismiss this appeal under the disentitlement doctrine because Husband "has not complied with the terms of the MSA by failing to make any of the required payments for the property."[5] The "disentitlement doctrine" gives an appellate court inherent power to dismiss an appeal where an appealing party has refused to comply with lower court orders (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265 (*Ironridge Global*)) or has engaged in "obstructive tactics" (*Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1391). To apply the doctrine, there need not be a formal adjudication of contempt.

---

[5]     As a preliminary matter, Wife argues that Husband's opening brief fails to include a statement of appealability in violation of California Rules of Court, rule 8.204(a)(2)(B). She also asserts that "[b]ecause the issue of selling the property was already decided in the terms of the MSA, the trial court's order here should not be appealable[.]" In reply, Husband acknowledges his "mistaken omission" of the statement of appealability. We will exercise our discretion to disregard such noncompliance. (Cal. Rules of Court, rule 8.204(e)(2)(C).) The notice of appeal states it is authorized by Code of Civil Procedure section 904.1, subdivision (a)(2), which permits an appeal from an order made after entry of an appealable judgment. The judgment of dissolution is a prior appealable judgment. Accordingly, we are satisfied that the denial of Husband's request to sell the property is an appealable order.

8

(*Ironridge Global*, at p. 265; *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379.) All that is required is a party's willful obstruction of, or failure to comply with, trial court orders. (*Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 756.)

"Dismissal under the disentitlement doctrine is not punishment for contemptuous acts, but is instead an 'equitable tool' that allows an appellate court to induce compliance with a presumptively valid order, and is not lightly applied. [Citation.] The doctrine 'must be applied in a manner that takes into account the equities of the individual case' [citation], and it ' "is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed." ' " (*In re Marriage of Hearn* (2023) 94 Cal.App.5th 380, 388–389.)

Husband correctly points out that the MSA provides a remedy for a party's nonpayment of expenses related to the property, which is that the other party may make those payments and upon sale, escrow will reimburse the paying party the amount advanced with interest. In these circumstances, we decline to conclude "that [Husband] has willfully obstructed or failed to comply with the trial court orders at issue in this appeal [citation], and we decline to dismiss his appeal under the disentitlement doctrine." (*In re Marriage of Hearn, supra,* 94 Cal.App.5th at p. 389.)

**B.** ***The MSA Does Not Prohibit the Family Court from Ordering the Sale of the Residence Over Wife's Objection.***

In response to Husband's request to sell the property, Wife never argued that by terms of the MSA, the family court lacked the power to make the requested order. Rather, she contended that to the extent Husband sought to enforce the judgment of dissolution, he was precluded from doing so by his failure to renew the judgment within ten years of its entry pursuant to former section 291. Beyond the enforceability of the judgment, Wife

9

claimed there was no abuse of discretion by the court in finding the lack of any equitable reason to order a sale of the property, a contention that assumes the court's discretionary power to act. In conjunction with this latter argument, she asserted that principles of laches should bar Husband from requesting a sale of the home 14 years after the parties' child finished elementary school.

Now on appeal, emphasizing some ambiguous language in the settled statement, Wife appears to make the jurisdictional argument she declined to offer in the trial court. Explaining the decision to deny Husband's request, the settled statement expresses the court's view "that [Husband] was seeking a judicial revision of the MSA over the objection of Wife, to which he was not entitled." Wife interprets this language as indicating that the MSA prohibits the family court from ordering a sale of the residence without the express consent of Wife.

"We construe the MSA under the rules governing the interpretation of contracts generally." (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013.) Our goal is to give effect to the mutual intent of the parties when they entered into the settlement. (*Ibid.*) Where, as here, the foundational facts are not in dispute and no conflicting extrinsic evidence was presented, we review the proper construction of the written agreement de novo. (*Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891.) If the language is clear, we apply the terms of the contract to the unambiguous facts as a matter of law. (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) We endeavor to give effect to every provision of the agreement, avoiding a construction that would render any term unnecessary. (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 688.) Where there is ambiguity, we seek

10

to determine the most reasonable interpretation of the parties' agreement in light of the undisputed evidence. (See *Aozora Bank, Ltd. v. 1333 North California Boulevard* (2004) 119 Cal.App.4th 1291, 1296; *Millsap v. Spilman* (1969) 270 Cal.App.2d 444, 446.)

The key language in the MSA regarding the family court's jurisdiction to order a sale of the property is found in Paragraph No. 26, aptly titled, "Court's Jurisdiction Over Sale of Residence." (Some capitalization omitted.) It specifies that the court "shall reserve jurisdiction" to do various things regarding the sale of the property, including the power to "make further orders as may be required including . . . *ordering a sale on terms and conditions which may seem proper to the Court.*" (Italics added.) Significantly, the MSA expressly states that "[e]ither Husband or Wife may apply to the Court for any of these orders." The existence of this provision, as well as its plain language, gives the family court the power to order a sale. There is no other reason for including it in the agreement. Moreover, the sentence allowing either party to request the order undermines Wife's position that the family court could not order a sale of the residence without her agreement; it would be unnecessary if both parties' consent were required. Indeed, there would never be a need for a court-ordered sale if every sale depended on a mutual agreement of the parties.

Seeking to find ambiguity, Wife points to Paragraph No. 23, "Sale of the Family Residence," which recites that following execution of the MSA the parties will "hold the residence as tenants-in-common, without the right of partition, subject to it being sold and the proceeds distributed as set forth below." She suggests that by foregoing "the right of partition," the parties somehow eliminated the family court's power to order a sale. But the two concepts are in no way inconsistent. Paragraph No. 23 concerns the rights of

11

the *parties*. A *right* of partition *entitles* either party to compel a sale. Paragraph No. 26 concerns the power of the court. It merely allows either party to *request* that the court order a sale. There is no right to compel one.

Wife also relies on language in Paragraph Nos. 24 and 27, both of which reference a mutual decision to sell the residence.[6] But the fact that the parties contemplated and perhaps even expected an agreed-upon sale of the property cannot erase the effect of other language in the MSA specifically permitting a court-ordered sale. Indeed, there is no inherent contradiction in the MSA including certain provisions that apply if the parties mutually agree on a sale, and other provisions that apply in the absence of an agreement.

In short, even if there were some arguable ambiguity, the most reasonable interpretation of the MSA *permits* but does not *require* the court to order the sale of the house on the request of one party over the objection of the other.

## C.   *Husband Was Entitled to Request a Court-Ordered Sale of the Property Without Renewing the Dissolution Judgment.*

In the trial court, Wife characterized Husband's request as an attempt "to enforce a judgment for sale of the marital home." She argued that a "judgment for sale of property" entered in 2005 would have "expired in 2015

---

6      Paragraph No. 24.A states that "[u]ntil the time *that the parties decided* [*sic*] *to sell the residence*, Wife shall have exclusive use and occupancy of the residence . . . ." (Italics added.) Paragraph No. 27 provides: "Upon *jointly making the decision to sell the residence* both Husband and Wife shall be given the first opportunity to purchase the residence for fair market value to be determined by and independent appraiser or real estate broker." (Italics added.)

12

under former Family Code section 291," and is thus unenforceable if not renewed.[7]

Wife's reliance on former section 291's judgment renewal requirement in support of her contention that Husband could not obtain an order for sale of the property is based on a misapprehension of the nature of Husband's request. We need not decide what effect the statute might have if Husband were seeking to enforce a requirement in the MSA that the house be sold after the parties' child completed elementary school. But as Wife accurately points out, there was no such requirement. The MSA merely stated that the parties would *consider* selling the residence at that time. Indeed, Husband does not contend otherwise.

Husband was not seeking to enforce a specific provision of the MSA. Instead, he sought to invoke the family court's retained jurisdiction to *entertain a request* to sell the house. Because his request was based on the court's continuing jurisdiction and not on an obligation imposed by the judgment, it did not require renewal of the judgment after ten years.

---

[7] It is not totally clear whether Wife continues to pursue this argument. A heading in the respondent's brief asserts that the version of section 291 "in effect when the judgment of dissolution was entered bars [Husband's] request for order to sell the property." (Some capitalizations omitted.) In the substantive discussion of this issue, however, she notes that the "trial court ultimately did not make any findings or conclusions regarding the application of [former] Family Code section 291," instead merely holding "that the MSA does not require the sale of the residence." As a result, she maintains, "the issue of whether [former] Family Code section 291 bars [Husband's] request is not properly before the Court since it was not considered and ruled upon during the lower court proceedings."

**D.** ***Remand Is Necessary to Ensure that the Family Court Exercises Informed Discretion in Deciding Whether to Order a Sale.***

Because the family court had the discretionary power to order the sale of the residence, it was required to exercise that discretion in an informed manner. (See *People v. Russel* (1968) 69 Cal.2d 187, 195 ["all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue"].) "Normally, we must presume the trial court was aware of and understood the scope of its authority and discretion under the applicable law." (*Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 333.) But "[i]f the record demonstrates the trial court was unaware of its discretion or that it misunderstood the scope of its discretion under the applicable law, the presumption has been rebutted, and the order must be reversed." (*Id.* at p. 334.)

Here, it is unclear whether the court thought it lacked the power to order a sale of the residence, or simply concluded that the facts and circumstances of the case did not justify such an order. On one hand, its statement that "[Husband was seeking a judicial revision of the MSA over the objection of [Wife], to which he was not entitled" seems the suggest a belief that the MSA *prohibited* an order for the sale of property if Wife did not agree. On the other, the court made a specific finding that Husband "had admittedly not performed his own obligations under the MSA related to the property," and it relied on this finding as justification for its conclusion "equity did not require an immediate sale, not called for by the terms of the MSA, to recoup an investment he had not made since signing the MSA." This reasoning would seem to indicate the court's awareness that it could order the sale if the circumstances warranted.

14

Because we cannot tell whether the trial court properly understood the significant discretion it possessed in ruling on Husband's request, we must remand the matter to the family court to assure the exercise of its informed discretion. If the court ultimately concludes that Husband's failure to meet "his own obligations under the MSA related to the property" justifies the denial of his request, it should specify whether and how satisfying those obligations would warrant a different result.

## DISPOSITION

The order denying Husband's RFO to sell marital home is reversed, and the matter is remanded to the family court for further proceedings consistent with this opinion. Husband is entitled to costs on appeal.

DATO, J.

I CONCUR:

McCONNELL, P. J.

15

O'Rourke, J., Dissenting.

I respectfully dissent. Although the majority correctly recites well-established rules for the interpretation of contracts, it ignores them in concluding the trial court has discretion under paragraph No. 26 of the MSA to grant Husband's petition to sell the residence. The majority asserts: "We endeavor to give effect to every provision in the agreement, avoiding a construction that would render any term unnecessary." (Maj. opn., *ante*, at p. 10.) But a correct application of this rule compels one to reject the majority's interpretation out of hand because it is flatly contradicted by the plain language of paragraph No. 23 of the MSA, which provides, "The parties shall hold the residence as tenants-in-common, without the right of partition."

How does the majority confront this conundrum? It states: "Paragraph No. 23 concerns the rights of the *parties*. A *right* of partition *entitles* either party to compel a sale. Paragraph No. 26 concerns the power of the court. It merely allows either party to *request* that the court order a sale. There is no right to compel one." (Maj. opn., *ante*, at p. 12.)

The majority presents us with a distinction without a difference. A court only has power to issue an order if a party establishes that it has a legal right to the order. Husband seeks an order compelling sale of the property over Wife's objections—the very partition barred by paragraph No. 23. Rather than reconciling paragraph Nos. 23 and 26, the false dichotomy between "rights of the parties" and "power of the of the court" reads paragraph No. 23 out of the MSA.

The MSA's paragraph No. 26 must be read, as the majority instructs us, to "give effect to every provision in the agreement." (Maj. opn., *ante*, at p. 10.) Paragraph Nos. 24 and 27 refer to a joint decision to sell the property

1

(the only sale possible in view of the strictures of paragraph No. 23). Paragraph No. 26 deals with the minutiae arising from a joint decision to sell, and specifically illustrates the kinds of matters it contemplates: "The [c]ourt in any dissolution of marriage proceeding shall reserve jurisdiction to enforce the provisions of this section in the event a dispute arises between the parties, or at any time it is appropriate to do so, and to make further orders as may be required, including but not limited to naming the broker and/or agent, establishing terms of sale and sales price, ordering a sale on terms which may seem proper to the [c]ourt."

The trial court was mindful of the appropriate use of its resources and indicated that even if it had discretion under the MSA to order a partition, it would not do so because Husband has failed to fulfill his requirements under the MSA. Such a ruling, as the majority well knows, is not an abuse of discretion. Under these circumstances, the majority's remand to the court is unnecessary.

Our role in this matter is limited to determining whether the trial court's ruling constitutes an abuse of discretion. "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; accord, *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [" 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered' "].) This court is without power to order the trial court to exercise its discretion in any particular way. That this court might exercise discretion differently does not make the trial court's decision an abuse of discretion. (*In re Marriage of Baker* (1992) 3 Cal.App.4th 491, 498 ["We are neither authorized nor inclined

to substitute our judgment for the judgment of the trial court. Where the issue on appeal is whether the trial court abused its discretion, the showing necessary for reversal is insufficient if it merely emphasizes facts which afford an opportunity for a different opinion"].)

The majority overreaches by ordering the lower court how to exercise its discretion: "If the court ultimately concludes that Husband's failure to meet 'his own obligations under the MSA related to the property' justifies the denial of his request, it should specify whether and how satisfying those obligations would warrant a different result." (Maj. opn., *ante*, at p. 15.) It is the obligation of a court to act fairly and impartially in exercising its discretion. Husband is represented by counsel. It is that counsel's task—not the trial court's—to formulate and advance arguments on behalf of Husband. By ordering the court "to specify whether and how satisfying those obligations would warrant a different result," the majority violates Wife's right to a fair and impartial hearing.


O'ROURKE, J.